RAMSEY, Respondent, v. MABERRY, Appellant.

St. Louis Court of Appeals, February 23, 1909.

1. **CONTRACTS: Consideration: Breach.** Where a mortgage on a lot of cattle provided that they should not be removed from the county by the mortgagor without the consent of the mortgagee and it was agreed between the mortgagor and the mortgagee that the mortgagor should remove the cattle to another county and have permission to ship them thence to St. Louis to market, the expense and trouble incurred in driving the cattle to the other county was sufficient consideration for the agreement by the mortgagee to allow the mortgagor to ship the cattle to market, and the failure of the mortgagee to permit such shipment rendered him liable in damages to the mortgagor.

2. ———: ———: ———: **Measure of Damages.** And in an action for breach of such contract, the measure of the mortgagor's damages was the difference between the market price of the cattle in St. Louis at the time he wished to ship them and what they brought thirty days later when the mortgagee permitted him to sell them.

3. ———: ———: ———: ———: **Expense.** Although the plaintiff claimed in such case that the defendant compelled him to drive the cattle to another place to market, the expense of such driving was not an element of damage because the defendant had no power to compel him to move the cattle in that manner. Likewise the expense of driving the cattle to the first county mentioned was not an element of damage.

Appeal from Ozark Circuit Court.—*Hon. John T. Moore,* Judge.

Ramsey v. Maberry.

REVERSED AND REMANDED.

*Livingston & Conrad* for appellant.

Now, the plain, indisputable legal proposition is presented, that if such were true, the agreement is wholly without consideration, and a mere *nudum pactum*. This contention of appellants is so apparent and the law so well settled in his favor that it would seem to be useless to cite authorities. Zeer v. Klung, 121 Mo. App. 285; Ward v. Hartley, 178 Mo. 135; Haseltine v. Ausherman, 87 Mo. 410; Smith v. McCall, 63 Mo. App. 681; Klausman Co. v. Schoenlaw, 32 Mo. App. 357; Dick Bros. v. Finnell, 39 Mo. App. 276; Wendover v. Baker, 121 Mo. 273; Riley v. Stevenson, 118 Mo. App. 187.

*Geo. W. Boone* and *Thornberry & Luna* for respondent.

It is the settled rule of law that a contract which either benefits the promisor or the promisee, or where the least injury or detriment is suffered by the promisee is a good consideration. Marks v. Bank, 8 Mo. 316; Lancaster v. Elliott, 55 Mo. App. 249; Delaney v. Bowman, 82 Mo. App. 252; Columbia Inc. L. Co. v. Elec. Mfg. Co., 64 Mo. App. 115; Strode v. Transit Co., 197 Mo. 623. Though promise is voluntarily made, yet the promisee relies upon it, and is injured by the failure of the promisor to perform it, an action will lie by the promisee. Delaney v. Bowman, 82 Mo. App. 252.

GOODE, J.—Plaintiff asks damages for the breach of a contract entered into between him and defendant. Both men are cattle dealers in Ozark county. Plaintiff owned fifty-four head of cattle on which he executed a chattel mortgage to defendant June 12, 1905, to secure the payment of a promissory note for $999.78. The cattle were on plaintiff's farm in said county and he

was prohibited by the mortgage from removing them, while it was in force, from the county, without obtaining the consent of defendant, the mortgagee. Neither the mortgage nor the note is in evidence, nor is it stated anywhere in the testimony when the debt matured. While the note was still unpaid, plaintiff applied to defendant for permission to drive the cattle to the railway at Marshfield, in Webster county, and sell them or ship them to St. Louis if he (plaintiff) thought best to do so. Plaintiff told defendant he wished to act on his (plaintiff's) own judgment, and have the right when he got to the railway to sell or ship to St. Louis for sale, if he thought the market was good. In making the request plaintiff offered to indemnify defendant by giving another note with personal security, against loss in consequence of the cattle being taken out of the county. Defendant said he did not want any other note and for plaintiff to go ahead, agreeing specifically to the request as made. At the same time defendant said he intended to drive his own cattle out of the county in three or four days and if plaintiff was not ready before then, they would drive together. This was done and plaintiff's and defendant's stock, and also the cattle of two other men, Martin and Young, were driven out at the same time. We infer from the evidence the pasturage was not good in Ozark county and one purpose of driving from there was to get better grass. Plaintiff's and defendant's cattle were driven within four miles of Marshfield and put on a pasture. The market price in St. Louis at the time was $2.85 a hundredweight for cattle and as plaintiff deemed this a good price, he arranged with the railway station agent to ship in a day or two. Thereupon defendant interfered and said he (defendant) was going to drive his cattle further north into Saline county and refused to let plaintiff ship to St. Louis or sell. The petition alleges defendant compelled plaintiff to drive his cattle north, and compelled him afterwards to ship them to

St. Louis at a time when the market was down, and plaintiff lost money by the fall in the market, the loss of the animals in weight, and the expense he was put to in driving and caring for the cattle. Compensation for these losses was asked. We have stated, the testimony in its aspect most favorable to plaintiff, since the jury found a verdict in his favor. Defendant did not deny making the agreement with plaintiff as testified, neither did he admit it. He denied refusing to permit plaintiff to ship his cattle from Marshfield to St. Louis and testified he (defendant) acceded to plaintiff's request, provided plaintiff would have a draft for the proceeds of the cattle sent to the bank at Marshfield payable to defendant; but plaintiff decided to go on north with the other cattlemen. The stock was driven into Saline county and about thirty days afterwards was sold on the St. Louis market for $2.15 per hundredweight, or at a loss of seventy cents a hundred. It is in proof the cattle shrunk forty or fifty pounds each during the trip north. The instructions of the court authorized a verdict for plaintiff if the jury found the facts according to his version of them, and said that in estimating the damages they should allow the difference between the market price of the cattle in St. Louis at the time they would have arrived there if plaintiff had been permitted to ship from Marshfield, and the market price in St. Louis when they were shipped; also the shrinkage in weight of the cattle meanwhile and the expense entailed on plaintiff in driving and caring for them. A verdict was returned for plaintiff in the sum of $350.

The agreement declared on is said to have been without consideration, but we cannot accept this view. It does not appear plaintiff paid anything for the privilege of taking the cattle out of Ozark county, but he incurred expense and trouble in driving them to the railroad and it must have been known he would. Moreover, defendant may have deemed it to his advan-

tage to have them taken away; for he took his own cattle out. The burden of expense and labor plaintiff assumed was sufficient consideration to support the contract. [Hartzell v. Saunders, 49 Mo. 433; Williams v. Jansen, 75 Mo. 681.]

What was the measure of damages? The averments of the petition are sufficient to show the main purpose for which plaintiff entered into the arrangement, was to take advantage of a good market if it prevailed when he reached the railway, and defendant knew this was his purpose. Therefore the measure of damages for breach of the contract would include the difference between the market price of stock in St. Louis at the date when plaintiff wished to ship and sell, and what the stock brought thirty days later. It included also the decline meanwhile in the weight of the cattle. Error was committed in allowing a recovery for the expense plaintiff bore in driving the cattle from Marshfield to Saline county and caring for them until sold. Though it was alleged plaintiff was compelled to do this, it is plain he could not be compelled, but might have turned the cattle over to defendant at Marshfield, and no coercion was deducible from his testimony, for he said defendant merely declared if plaintiff did not take the cattle northward, he (defendant) would. The expense and labor plaintiff incurred in taking his stock to Saline county and caring for them there, were voluntarily assumed and not damages caused by defendant's breach. Neither was the expense of driving to Marshfield; for that plaintiff undertook as part of the consideration for defendant's agreement to allow him to ship and sell, if he chose, when a railway was reached. These cases are in point on the measure of damages: Athletic Baseball Assn. v. St. Louis, etc., Assn., 67 Mo. App. 653; United States v. Behan, 110 U. S. 338. The proof is uniform and exact that the expense plaintiff incurred was $139, which sum we may order remitted from the

verdict. If remitted within ten days from the filing of this opinion, the judgment will be affirmed; otherwise it will be reversed and the cause remanded. All concur.